**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH DAKOTA**

**NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:22-CR-10031-CBK** |
| **Plaintiff,** | |
| **vs.** | **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS (ON SECOND AMENDMENT GROUNDS)** |
| **TUJUANE LENO LOWRY,** | |
| **Defendant.** | |

Defendant Tujuane Leno Lowry is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moves to dismiss the indictment on the basis that § 922(g)(1) is an unconstitutional violation of the Second Amendment after the Supreme Court decided *New York State Rifle & Pistol Ass'n v. Bruen*.[1] Because historical tradition supports the constitutional basis for prohibiting dangerous felons from possessing firearms, Lowry's motion should be denied.

---

[1] 142 S. Ct. 2111 (2022).

## BACKGROUND

In 2019 and 2020, Lowry plead guilty in South Dakota state court to possession of a controlled substance, unauthorized ingestion of a controlled substance, simple assault of a law enforcement officer, and aggravated eluding.[2]  Under state law, each of these offenses is a felony.  For purposes of his dismissal motion, Lowry does not to argue, nor can he argue, that he is "no more dangerous than [the] typical law-abiding citizen."[3]

On August 9, 2022, a grand jury indicted Lowry, charging him under 18 U.S.C. § 922(g)(1) with being a prohibited person in possession of a firearm for possessing a Beretta pistol while a felon.[4]  Section 922(g)(1) states: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."[5]  Lowry seeks to dismiss the indictment because § 922(g)(1) is unconstitutional in light of the Supreme Court's decision last year in *Bruen*.  It is unclear

---

[2] Docket No. 8 at 7-8.

[3] *United States v. Hughley*, 691 F. App'x 278, 279 (8th Cir. 2017); *see also United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014) (requiring defendant to "present[] facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections").

[4] *See* Docket No. 1.

[5] *See* 18 U.S.C. § 922(g)(1).

whether Lowry brings a facial or an as-applied challenge to the law, but in either scenario, he cannot prevail.

## DISCUSSION

### A. History of the Second Amendment's Scope

The starting point, of course, is the Supreme Court's Second Amendment jurisprudence. In *District of Columbia v. Heller*,[6] the Court heard its first Second Amendment case in almost 70 years[7] and recognized that the Amendment protected an individual's right to keep and bear arms for self-defense.[8] The Court then held, in *McDonald v. City of Chicago*, that the Due Process Clause of the Fourteenth Amendment incorporated this "fundamental" right against the states.[9] After *Heller* and *McDonald*, federal courts coalesced around a two-step framework that combined history with means-end scrutiny.[10] The Eighth Circuit, however, seems to have avoided directly adopting this framework when addressing constitutional challenges to firearm laws,[11]

---

[6] 554 U.S. 570 (2008).

[7] *See United States v. Miller*, 307 U.S. 174 (1939) (upholding the National Firearms Act of 1934 that banned sawed-off shotguns).

[8] 554 U.S. at 595.

[9] 561 U.S. 742, 790 (2010).

[10] *See, e.g.*, *Bruen*, 142 S. Ct. at 2125-26.

[11] *See United States v. Adams*, 914 F.3d 602, 607-08 (8th Cir. 2019) (Kelly, J., concurring in the judgment).

although it has applied means-end scrutiny when evaluating the constitutionality of 18 U.S.C. § 922(g)(8).[12]

More than a decade after *Heller* and *McDonald*, the Supreme Court in *Bruen* passed on the constitutionality of New York's firearm licensing regime that required persons seeking to carry a firearm outside of their home to show "proper cause."[13]  In holding that New York's firearm regulation was an unconstitutional violation of the Second Amendment, the Court examined the two-step approach developed after *Heller* and found it was "one step too many."[14]  The Court instructed courts, in a single step, to assess "whether modern firearms regulations are consistent with the [] Amendment's text and historical understanding."[15]  If an individual is someone whom the Amendment protects then "the government must prove that its regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."[16]

---

[12] *See United States v. Bena*, 664 F.3d 1180, 1184-85 (8th Cir. 2011).

[13] *Bruen*, 142 S. Ct. at 2122–23.

[14] *Id.* at 2127.

[15] *Id.* at 2131.

[16] *Id.* at 2127.

When considering the evidence presented, a court must determine whether the regulation at issue is "relevantly similar" to those at the Founding.[17]  In making this determination, a court must employ "analogical reasoning" and look at "how and why the regulation burdens a law-abiding citizen's right to armed self-defense," the "central component" of the Second Amendment.[18]  Such reasoning "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.[19]  An assailed regulation that is not a "dead ringer for historical precursors," may nonetheless be sufficiently analogous enough to pass constitutional muster."[20]

### B.  Section 922(g)(1) Survives *Bruen*

Based on what he maintains is a "new standard" for evaluating the constitutionality of firearms regulations, Lowry seeks to have his indictment dismissed. Before delving into the thicket of the *Bruen* standard, it is important to address what has not changed.  In *Heller*, the Supreme Court emphasized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms

---

[17] *Id.* at 2132 (quoting Cass R. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)).

[18] *Id.* at 2132-33 (cleaned up).

[19] *Id.* at 2133.

[20] *Id.*

by felons and the mentally ill."[21]   The Court identified those regulatory measures as "presumptively lawful."[22]   In *McDonald*, the Court "repeat[ed] those assurances," "making clear" that *Heller* did not question abiding regulations prohibiting felons from possessing firearms.[23]   Although these statements can fairly be characterized as dicta, in the wake of *Heller* and *McDonald*, the Eighth Circuit ruled several times on the constitutionality of § 922(g)(1).   In one case, the appeals court, albeit in a summary fashion, brushed aside the defendant's facial challenge to § 922(g)(1) and ruled that Congress did not violate the Second Amendment when it enacted the statute.[24]   The court mirrored that ruling in another case, dismissing the defendant's as-applied challenge to § 922(g)(1).[25]   Neither case applied means-end scrutiny in holding that § 922(g)(1) was a constitutional restriction on felons' Second Amendment rights.   So even if the Supreme Court's statements are not precedential, the Eighth Circuit's rulings are.[26]   It would

---

[21] 554 U.S. at 627.

[22] *Id.* at 627 n.26.

[23] 561 U.S. at 786.

[24] *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *see also United States v. Roach*, 470 F. App'x 537, 538 (8th Cir. 2012).

[25] *United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014); *see also United States v. Brown*, 436 F. App'x 725 (8th Cir. 2011) (per curiam).

[26] *United States v. Smith*, 460 F. Supp. 3d 783, 792 (E.D. Ark. 2020); *but see United States v. Le*, No. 4:23-CR-00014-SHL-HCA, 2023 WL 3016297, at *2 (S.D. Iowa) (observing that in one respect *Bruen* may have abrogated Eighth Circuit precedent, which required the defendant prove the Second Amendment protected his conduct, by placing the burden

require a leap of faith to say that *Bruen* overruled the Eighth Circuit's application of *Heller*

and *McDonald*'s dicta when the *Bruen* Court repeatedly declared that its decision was

consistent with both cases.[27]  Lowry's motion should be denied on that basis alone.

The motion also fails under the *Heller*-endorsed standard the Supreme Court

"reiterate[d]" and made "more explicit" in *Bruen*.[28]  Under that standard,

> When the Second Amendment's plain text covers an individual's conduct,
> the Constitution presumptively protects that conduct.  The government
> must then justify its regulation by demonstrating that it is consistent with
> the Nation's historical tradition of firearm regulation.  Only then may a
> court conclude that the individual's conduct falls outside the Second
> Amendments "unqualified command."[29]

Some federal courts have interpreted this standard as once again involving two steps.[30]

And *Bruen* lends itself to such an interpretation.  Under it, the first step is to determine

whether the challenged regulation governs conduct that falls within the textual

protections of the Second Amendment.  If the regulation does govern such conduct, then

the second step requires that the government justify the regulation by showing an

---

of proof on the government to show historical evidence supporting the regulation in
question).

[27] 142 S. Ct. at 2122, 2126-27, 2129-31, 2133-34.

[28] *Id.* at 2129, 2134.

[29] *Bruen*, 142 S. Ct. at 2129–30.

[30] *See, e.g.*, *National Rifle Association v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023) ("Like
the Fifth Circuit, we read *Bruen* as articulating two analytical steps.").

"American tradition" for it that imposed a comparable burden on the right of armed self-defense.[31]

Embracing this view of *Bruen*, the government argues that felons are not within the textual meaning of "the people" and are entitled to no Second Amendment protection.[32]  Some courts have adopted this view.[33]  But the government's argument clashes with the use of "the people" elsewhere in the Constitution and Bill of Rights, and *Bruen* rejected a multi-step inquiry.[34]  In *Heller*, the Supreme Court interpreted "the people" as "all Americans."[35]  Felons are not categorically excluded from that group.[36]  A person who is convicted of a qualifying felony offense does not automatically lose his right to keep and bear arms, but "becomes *eligible* to lose it."[37]  The question is whether

---

[31] *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023).

[32] Docket No. 31 at 7-8.

[33] *See, e.g.*, *United States v. Villalobos*, No. 3:19-CR-0040-DCN, 2023 WL 3044770, at *5-6 (D. Idaho Apr. 21, 2023); *United States v. Medrano*, No. 3:21-CR-39; 2023 WL 122650, at *1-2 (N.D. W.Va. Jan. 6, 2023).

[34] *Bruen*, 142 S. Ct. at 2127; *see also United States v. Coombes*, No. 22-CR-00189-GKF, 2022 WL 4367056, at *3-4 (N.D. Okla. Sept. 21, 2022) (felons fell within "the people" contemplated in First, Second, and Fourth Amendments).

[35] *Heller*, 554 U.S. at 580–81; *see also id.* at 580 (asserting that "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community").

[36] *Coombes*, 2022 WL 4367056, at *4.

[37] *See Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting); *see also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An*

the government has the right to disable the felon's right to possess a firearm, not whether the felon has such a right.[38]

Lowry is accused of possessing a handgun within a residence. The Supreme Court has said that the Second Amendment protects an individual's right to own and carry firearms for the purpose of self-defense both inside and outside the home.[39] The Amendment presumptively applies to Lowry's conduct. Even if it is characterized as a "first step," the question of whether the Second Amendment covers an individual's right to possess a firearm for self-defense has one answer—yes.[40]

As the Supreme Court pointed out in *Heller*, there may be certain limitations to the scope of the Amendment "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"[41] It is perhaps fair to say that the protection of an individual's right to self-defense may not extend to the possession of a

---

*Analytical Framework and a Research Agenda*, 56 UCLA L. REV. 1443, 1497–98 (2009) (describing the two competing perspectives of Second Amendment analysis).

[38] *Kanter*, 919 F.3d at 453 (Barrett, J., dissenting).

[39] *Bruen*, 142 S. Ct. at 2122 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.").

[40] *See United States v. Charles*, No. 22-CR-00154, 2022 WL 4913900, at *2 (W.D. Tex. 2022) ("*Bruen*'s first step asks a strictly textual question with only one answer: the Second Amendment's plain text covers possession of a firearm.").

[41] 554 U.S. at 627.

hand grenade or a land mine.[42]  But because only a pistol is involved in Lowry's case, the Second Amendment presumptively guarantees him – even as a felon with drug, assault, and eluding convictions – the right to possess the handgun.[43]  The government must therefore show that its regulation of him (via 18 U.S.C. § 922 (g)(1)) accords with this Nation's historical tradition of firearm regulation.[44]

Although the Second Amendment protects an individual's right to own and possess firearms inside and outside the home for the purpose of self-defense, the right is not unlimited.[45]  Congress enacted an array of restrictions on firearm possession based on certain characteristics found in 18 U.S.C. § 922.  A recent South Dakota district court decision, as it relates to § 922(g)(1), is particularly persuasive.[46]  Lowry challenges the reasoning in that decision, contending that the court did not engage in a proper historical

---

[42] *See Heller*, 554 U.S. at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.  That accords with the historical understanding of the scope of the right.").

[43] *See, e.g.*, *United States v. Hoeft*, No. 4:21-cr-40163, 2023 WL 2586030, at *5-6 (D.S.D. Mar. 21, 2023); *United States v. Carrero*, 2:22-cr-00030, 2022 WL 9348792, at *6-7 (D. Utah Oct. 14, 2022); *United States v. Price*, No. 2:22-cr-00097, 2022 WL 6968457, at *6-7 (S.D.W. Va. Oct. 12, 2022); *Coombes*, 2022 WL 4367056, at *3-4.

[44] *Bruen*, 142 S. Ct. at 2135.

[45] *See id.* at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited.").

[46] *Hoeft*, 2023 WL 2586030, at *3-4.

analysis of § 922(g)(1) and that the court improperly relied on a twelve-year-old case,[47] where the Eighth Circuit applied a balancing test to its analysis.  The appeals court in that case addressed the constitutionality of § 922(g)(8), not § 922(g)(1), and the court's remark about the first federal felon-in-possession restriction enacted in 1938[48] preceded a discussion of the historical tradition of restricting Second Amendment rights for citizens who do not follow the law.[49]  Modern federal firearm legislation became possible and likely resulted from the Supreme Court's permissive approach to federal regulation under the commerce power starting in the late 1800s and early 1900s.[50]  Lowry is correct that the first federal statute prohibiting felons from possessing firearms in § 922(g)(1) was enacted in 1938 and amended to prohibit possession by all felons in 1961.[51]  He is wrong

---

[47] *Bena*, 664 F.3d 1180.

[48] *Id.* at 1182 ("The first federal felon-in-possession law was not enacted until 1938, when it applied to those convicted of violent felonies, and the prohibition was extended to all felons in 1961.").

[49] *Id.* at 1183 ("Scholarship suggests historical support for a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible.  The Court's discussion is consistent with the view that in "classical republican philosophy, the concept of a right to arms was inextricably and multifariously tied to that of the 'virtuous citizen,'" such that "the right to arms does not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue." (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, LAW & COMTEMP. PROBS., Winter 1986, at 146 (1986))).

[50] *See United States v. Lopez*, 514 U.S. 549, 552–57 (1995) (reviewing the history of the Supreme Court's approach to Commerce Clause jurisprudence).

[51] *See United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011).

though in suggesting that all federal firearm regulation as unconstitutional because no such legislation existed at the time of the nation's founding.  Indeed, historical evidence pertaining to the regulation of firearm possession supports the constitutionality of the restriction.

Beginning in the late seventeenth century during England's Restoration and Glorious Revolution, the restored Stuart monarchs disarmed nonconformist Protestants.[52]  Even after Parliament restored Protestants' right to keep arms in the English Bill of Rights, restoration was expressly subject to the discretion of Parliament.[53] As "the predecessor to our Second Amendment,"[54] this declaration shows the "historical understanding"[55] that the legislature had the power to restrict the right to bear arms for certain citizens who did not follow the law.

In colonial America, certain disaffected groups who were disloyal to the government could be disarmed.[56]  During several states' ratifying conventions, various

---

[52] *See* JOYCE LEE MALCOLM, TO KEEP AND BEAR ARMS: THE ORIGINS OF AN ANGLO-AMERICAN RIGHT 45 (1994) (describing how Charles II "totally disarmed . . . religious dissenters").

[53] 1 W. & M. c.2, § 7 (Eng. 1689) ("Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law.").

[54] *Bruen*, 142 S. Ct. at 2141 (quoting *Heller*, 554 U.S. at 593).

[55] *Id.* at 2131.

[56] *See* James F. Cooper, Jr., *Anne Hutchinson and the "Lay Rebellion" Against the Clergy*, 61 NEW ENG. Q. 381, 391 (1988) (following Anne Hutchinson's conviction and banishment for her Antinomian beliefs, the colonial government disarmed dozens of her followers);

proposals were made that would have restricted firearm possession for dangerous individuals.   At the Pennsylvania ratifying convention, Anti-Federalists proposed an amendment providing that "no law shall be passed for disarming the people or any of them *unless for crimes committed*, or real danger of public injury from individuals."[57]  In an amendment introduced at the Massachusetts convention, Samuel Adams proposed that the "Constitution be never construed to authorize Congress . . . to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms."[58]  And ratifiers at the New Hampshire convention considered a proposed amendment that "Congress shall never disarm any Citizen, unless such as are or have been in Actual Rebellion."[59]

---

Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 263 (2020) (discussing how Maryland, Virginia, and Pennsylvania disarmed Catholic residents); STEPHEN P. HALBROOK, THE FOUNDER'S SECOND AMENDMENT: ORIGINS OF THE RIGHT TO BEAR ARMS 116–18 (2008) (documenting how the Committee of Safety of the New York Provincial Congress disarmed "the disaffected" Tories and individuals neutral to the cause of independence).

[57] The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents, *reprinted in* BERNARD SCHWARTZ, 2 THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665 (1971) (emphasis added); *see also Binderup v. Attorney General*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc) (the founding generation recognized "[c]rimes committed . . . [as] an independent ground for exclusion from the right to keep and bear arms).

[58] Journal of Convention: Wednesday, February 6, 1788, *reprinted in* DEBATES AND PROCEEDINGS IN THE CONVENTION OF THE COMMONWEALTH OF MASSACHUSETTS HELD IN THE YEAR 1788, at 86 (Boston, William White 1856).

[59] 1 JONATHAN ELLIOT, THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION 326 (1836).

The Supreme Court referred to each of these states' proposals in *Heller* and considered the Pennsylvania one in particular as "highly influential."[60]  Together, the proposals, and the debates over them, confirm that the common law right to keep and bear arms did not include dangerous offenders.

Viewed in its entirety, the historical evidence[61] overwhelmingly supports the constitutionality of § 922(g)(1) that restricts a felon's ability to possess firearms.[62]  There is no perfect "historical analogue"[63] because colonial America's perspective on criminal punishment was more severe than it is today.[64]  But as the government notes, no federal district court has ruled that § 922(g)(1) is unconstitutional after *Bruen*.[65]

---

[60] *Heller*, 554 U.S. at 604.

[61] *See Sitladeen*, 64 F.4th at 985 ("Because '[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*,' regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period.").

[62] *See Coombes*, 2022 WL 4367056, at *5-8 (conducting thorough historical analysis of prohibition on felons possessing firearms).

[63] *Bruen*, 142 S. Ct. at 2133.

[64] *See Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring) (recognizing the "ubiquity of the death penalty in the founding era"); *see also* STUART BANNER, THE DEATH PENALTY: AN AMERICAN HISTORY 23 (2002) ("The death penalty circa 1700 was the equivalent of prison today—the standard punishment for a wide range of serious crimes."); *Folajtar v. Attorney General*, 980 F.3d 897, 902–05 (3d Cir. 2020) (discussing the history of felony classification and punishment).

[65] Docket No. 31 at 10-13, n. 2.

Lowry cites a handful of cases that have held other sections of § 922 to be unconstitutional, such as the provision prohibiting possession of a firearm by a person subject to a domestic violence restraining order found in § 922(g)(8)[66] and the prohibition on possession of a firearm by users of substances made illegal by the Controlled Substances Act found in § 922(g)(3).[67]  None of the sections involved in those cases are presented here.  Similarly, the question of whether nonviolent felons were barred from firearm ownership at the time of the founding is not implicated either because Lowry previously plead guilty to assaulting a police officer, a crime of violence.

The main piece of historical evidence that Lowry advances to support his argument is a federal statute from 1792 that required all free able-bodied white males to serve in the militia and to arm themselves.[68]  From this, he argues that if felons had to

---

[66] *See Rahimi*, 61 F.4th at 448.

[67] *See United States v. Harrison*, No. 22-CR-00328, 2023 WL 1771138, *1 (W.D. Okla. Feb 3, 2023).

[68] An Act More Effectually to Provide for the National Defence by Establishing an Uniform Militia Throughout the United States, 1 Stat. 271, 271 (1792) ("That and by whom each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia by the captain or commanding officer of the company, within whose bounds such citizen shall reside, and that within twelve months after the passing of this act.  And it shall at all times hereafter be the duty of every such captain or commanding officer of a company to enroll every such citizen, as aforesaid, and also those who shall, from time to time, arrive at the age of eighteen years, or being of the age of eighteen years and under the age of forty-five years (except as before excepted) shall come to reside within his bounds; and shall without delay notify such citizen of

serve in the militia, then they were protected by the Second Amendment and could

possess firearms for the purpose of self-defense.[69]  He also draws several comparisons to

federal courts that have ruled age restrictions on firearm possession unconstitutional.[70]  It

is, admittedly, a good argument.  If a 19-year-old was obliged to register for militia service

in 1792, then he had Second Amendment rights and any modern law restricting firearm

possession to those over 21 should be unconstitutional.  Lowry argues the same can be

said for laws that require 18-to-20-year olds to muster for the militia.[71]  But he "mistakes

---

the said enrolment, by a proper non-commissioned officer of the company, by whom
such notice may be proved.  That every citizen so enrolled and notified, shall, within six
months thereafter, provide himself with a good musket or firelock, a sufficient bayonet
and belt, two spare flints and a knapsack, a pouch with a box therein to contain not less
than twenty-four cartridges, suited to the bore of his musket or firelock, each cartridge
to contain a proper quantity of powder and ball: or with a good rifle, knapsack, shot-
pouch and powder-horn, twenty balls suited to the bore of his rifle and a quarter of a
pound of powder; and shall appear, so armed, accoutred and provided, when called out
to exercise, or into service, except, that when called out on company days to exercise
only, he may appear without a knapsack.").

[69] Docket No. 27 at 11-12.

[70] *See Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-CV-1245, 2022 WL 3656996 (N.D. Tex.
Aug. 25, 2022) (holding that Texas's statutory scheme prohibiting law abiding 18–20-
year-olds from carrying handguns outside the home for the purpose of self-defense is
unconstitutional); *see also National Rifle Association v. Bondi*, 61 F.4th 1317 (11th Cir. 2023)
(holding that Florida's regulations on 18–20-year-olds access to firearms is
constitutional); *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 5 F.4th 407
(4th Cir. 2021) (conducting a historical analysis of the Second Amendment rights of 18–
20 year olds), *cert. denied*, 142 S. Ct. 1447 (2022).

[71] Docket No. 27 at 11-12.

a legal obligation for a right."[72]  That obligation did not give the 18-year-old all the rights

of a 22-year-old (like, for example, the right to vote).[73] And even today, the 18-year-old

does not share all the rights that the 22-year-old does, such as being able to drink.[74]  As

already discussed, historical tradition establishes that a legislature may disarm a category

of people it believes dangerous – including felons.[75]  While the 18-year-old may be

conferred Second Amendment rights upon turning 18, a felon does not automatically lose

his rights upon becoming a felon.[76]  The offender's status as a felon – especially a

dangerous one – simply creates a circumstance under which lawmakers can limit Second

Amendment rights, as Congress did when it enacted § 922(g)(1).

Whether he challenges the constitutionality of 18 U.S.C. § 922 (g)(1) on a facial or

an as-applied basis, Lowry is not entitled to dismissal of the indictment.  His motion

should thus be denied.

---

[72] *Bondi*, 61 F.4th at 1331; *see also Heller*, 554 U.S. at 605 (stating that the Second Amendment "protect[s] an individual right unconnected with militia service"); *id.* at 582-86 (emphasizing that the Second Amendment is rooted in person's right to defend himself – not the obligation to serve in well-regulated militia).

[73] *Bondi*, 61 F.4th at 1331-32.

[74] *See* 23 U.S.C. § 158 (directing the Secretary of Transportation to withhold money from states with an under 21 drinking age); *South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (§ 158 a valid use of Congress's spending power).

[75] *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting).

[76] *Id.*

## CONCLUSION

18 U.S.C. § 922(g)(1) is facially constitutional and as applied to Lowry under Eighth Circuit and Supreme Court standards. Although the Second Amendment's plain text presumptively protects him, the historical tradition of this country permits Congress to prohibit his ability to possess a firearm because he is a felon (with a dangerous criminal history). He may thus be prosecuted and held to answer at trial for the § 922(g)(1) offense he is charged with.

## RECOMMENDATION

For the reasons and based on the authorities set forth in this report, it is

RECOMMENDED that Lowry's motion to dismiss indictment (on Second Amendment grounds)[77] be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object to the same.[78] Unless an extension of time for cause is later obtained,[79] failure to

---

[77] Docket No. 26.

[78] *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).

[79] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

file timely objections will result in the waiver of the right to appeal questions of fact.[80]

Objections must "identify[] those issues on which further review is desired[.]"[81]

DATED this 5th day of May 2023.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[80] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[81] *Arn*, 474 U.S. at 155.

19