# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TUJUANE LENO LOWRY,<br><br>Defendant. | 1:22-CR-10031-CBK<br><br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF ALTERNATIVE MOTION TO SUPPRESS |

Tujuane Leno Lowry orally moved to suppress statements he made in December 2022 and then filed two evidentiary supplements to the motion.[1]  The suppression motion is the third in a string of motions in Lowry's felon in possession of a firearm case.[2]  He seeks to suppress the letter he sent to a state court judge and the statements he made to a local police officer in connection with a complaint he filed against another officer.  The letter is admissible but Lowry's statements to the officer later on are not, at least as substantive evidence.  So the oral motion should be granted in part and denied in part.

---

[1] See Docket Nos. 39, 45; Mot. Hr'g Tr. 32-37.

[2] *See* Docket No. 1 (charging Lowry with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1)).

## BACKGROUND

The full background of Lowry's case is detailed in the Court's two other report and recommendations.[3]  Briefly stated, state authorities arrested Lowry on June 22, 2022 for various charges that included possessing a firearm with a prior felony drug conviction.[4]  He remained detained in either the Brown County or Faulk County Jail during that summer.  On August 9, 2022, a federal grand jury indicted Lowry, charging him with being a felon in possession of a firearm.[5]  The Clerk of Courts issued an arrest warrant for Lowry on August 9.[6]  A deputy sheriff served the warrant and indictment on Lowry the next day.[7]

The government waited until March 10, 2023 to seek a writ of habeas corpus ad prosequendum.[8]  A magistrate judge issued the writ on March 10 and the United States Marshals Service executed it four days later.[9]  Lowry argues state and federal authorities unnecessarily delayed his appearance on the federal charge, and he entreats a remedy on

---

[3] *See* Docket Nos. 55 & 63.

[4] Docket No. 25 at 1.

[5] *Id.* at 2.

[6] Mot. Hr'g Ex 3; Mot. Hr'g Tr. 103-05, 110-11 (May 1, 2023).

[7] Mot. Hr'g Ex. 2.

[8] Docket No. 5.

[9] Docket Nos. 6, 19.

those grounds in another motion.[10]  If he does not succeed on that motion, then he alternatively seeks to suppress several incriminating statements he made while in state custody.[11]

Lowry wrote a letter to the state trial judge griping about his circumstances.[12]  He complained about his state-appointed counsel's performance and broached a conspiracy with the state's attorney to violate his Sixth Amendment rights.[13]  Concerning the firearm allegations, Lowry also wrote, "Both me and [a named female] are convicted felons.  We both possessed weapons clearly on video, however, she was never charged."[14]  The letter is dated December 12, 2022.[15]

Around that same time, Lowry filed a complaint against an Aberdeen police officer.[16]  After receiving the complaint, Sergeant Mark Miller of the Aberdeen Police Department tried to contact state counsel for approval to meet with Lowry.[17]  When he

---

[10] Docket Nos. 24, 25.

[11] Docket Nos. 39, 45; Mot. Hr'g Tr. 32-34.

[12] Docket No. 45–1 at 1–2.

[13] *Id.*

[14] *Id.* at 2.

[15] *Id.* at 1.

[16] Mot. Hr'g Tr. 25-26.

[17] *Id.* at 37-38.

did not hear back from counsel after 13 days or so, Miller went ahead and met with Lowry at the jail.[18]  Although Miller did not ask questions about Lowry's cases in that meeting, Lowry spoke at length about them and wanted to give Miller a copy of a private investigator's report.[19]  The parties agree that Lowry's counsel neither was present for nor consented to the meeting,[20] and that Lowry was never Mirandized.[21]

## DISCUSSION

Lowry now seeks to suppress his written and oral statements.  Presumably, the government wants to use them in some way at trial.  Both sets of statements arguably contain confessions to the federal prohibited person offense.

### A. Voluntariness

To begin with, voluntariness is not an issue in the case – or at least one that can legitimately be contested.  Lowry wrote and sent the letter on his own.  Nothing in it suggests that he was coerced in any way.  He voiced his concerns to the state judge about his counsel and cases.  Lowry does not argue, nor could he, that the statements he made during the interview were compelled and not made of his own free will.  His statements

---

[18] *Id.* at 27, 37, 59–60.

[19] Mot. Hr'g Ex. 4 at 01:34-02:27; *id.* at 03:28-04:08 ("I know I'm a convicted felon. I know I wasn't supposed to be in possession of a firearm."); *id.* at 08:45-09:31; Mot. Hr'g Tr. 27, 41–42, 49-50.

[20] Mot. Hr'g Tr. 48.

[21] *Id.* at 39, 49.

– to the judge and to Sergeant Miller – are therefore not subject to suppression on voluntariness grounds.[22]

### A.    Letter

Lowry's letter to the state judge contains what is, in essence, a confession that he would like suppressed.  Even so, the letter is not subject to suppression under either *Miranda*[23] or the Sixth Amendment.

For *Miranda* to apply, there must be custodial interrogation.[24]  Lowry himself scribed the letter and had it conveyed to the judge presiding in his state cases: law

---

[22] *See United States v. Thunderhawk*, 799 F.3d 1203, 1206 (8th Cir. 2015) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."); *United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005) (holding that the same applies under the Fifth Amendment).

[23] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[24] *United States v. Tapia-Rodriguez*, 968 F.3d 891, 894 (8th Cir. 2020) (quoting *Miranda*, 384 U.S. at 444) ("Under *Miranda*, a defendant's statements are inadmissible if they were the product of 'custodial interrogation' and he was not properly advised of his right to be free from compulsory self-incrimination and to the assistance of counsel.").

*United States v. Hines*, 62 F.4th 1087, 1094 (8th Cir. 2023) (quoting *Tapia-Rodriguez*, 968 F.3d at 894) ("'Interrogation' is defined as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.'").

enforcement was in no way involved.  Although Lowry was in custody when he authored the letter, there was no interrogation, so *Miranda* does not apply.[25]

The Sixth Amendment's right to counsel likewise does not protect Lowry's written statements.  Although the right attaches at the time of indictment[26] and Lowry was under federal indictment at the time he prepared and transmitted the letter, the state did nothing to "deliberately elicit" his statements.[27]  The Sixth Amendment does not apply to one-sided communication.  Lowry's letter is fully admissible at trial.

**B.    Interview**

Sergeant Miller's interview with Lowry implicates *Miranda* and the Sixth Amendment right to counsel.  The Court though need not address the *Miranda* issue because Lowry's statements should be suppressed under the Sixth Amendment.

---

[25] *See Rhode Island v. Innis*, 446 U.S. 291 (1980) (*Miranda* warnings required only "where a suspect in custody is subjected to interrogation"); *Tapia-Rodriquez*, 968 F.3d at 894.

[26] *See United States v. Morriss*, 531 F.3d 591, 593 (8th Cir. 2008) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)) ("The long-standing rule is that the Sixth Amendment right to counsel does not attach until 'the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'").

[27] *See Fellers v. United States*, 540 U.S. 519 (2004) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)) ("We have held that an accused is denied 'the basic protections' of the Sixth Amendment "when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel.").

The filing of an indictment marks the start of the adversary judicial process to which the Sixth Amendment right to counsel attaches.[28] Once this process has begun, the Amendment "guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings."[29] "Interrogation by the state is such a stage."[30]

The government, for the most part, contends that the interview was not an interrogation.[31] Sergeant Miller was not using classic interrogation techniques, the government says, in an active attempt to elicit incriminating statements. In its view, Miller was a passive listener while Lowry made unsolicited statements. Under *Miranda*, this may be true. But the Sixth Amendment right to counsel provides a different type of armor for a suspect than the Fifth Amendment *Miranda* rule.[32] *Miranda* protects a defendant in a custodial interrogation; the right to counsel protects "the unaided layman at critical confrontations with his expert adversary, the government."[33] "Accordingly, the

---

[28] *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008) (commencement of defendant's right to counsel is pegged to initiation of adversary judicial criminal proceedings through formal charge in an indictment).

[29] *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (cleaned up).

[30] *Id.* (cleaned up); *see also Massiah*, 377 U.S. at 204–05; *United States v. Henry*, 447 U.S. 264, 274 (1980).

[31] *See* Docket No. 48 at 1–7, 10.

[32] *See McNeil v. Wisconsin*, 501 U.S. 171, 177–78 (1991) (discussing the differences between Sixth Amendment counsel and *Miranda-Edwards* guarantees).

[33] *McNeil*, 501 U.S. at 177 (citation omitted) (cleaned up).

Sixth Amendment is violated when the state obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent,"[34] even if the confrontation takes place through "indirect or surreptitious" means.[35]

Sergeant Miller, a state certified law enforcement officer,[36] testified that he spoke with Lowry's counsel to try to arrange an interview.[37]  A week later, Miller called counsel again and left him a voicemail.[38]  Miller never heard back from counsel and interviewed Lowry anyway.[39]  Granted, Miller did not affirmatively ask Lowry questions about his state cases.  But Lowry's inculpatory statements stemmed from the conversation he and Miller had.[40]  Notably, the interview took place in a county jail where Lowry was "particularly susceptible" to the subtle influences of a law enforcement officer.[41]

---

[34] *Maine v. Moulton*, 474 U.S. 159, 176 (1985) (cleaned up).

[35] *See Massiah*, 377 U.S. at 205–06.

[36] Mot. Hr'g Tr. 20.

[37] *Id.* at 37–38, 41, 47–48.

[38] *Id.* at 37–38, 44.

[39] *Id.* at 48.

[40] *See Henry*, 447 U.S. at 271.

[41] *See id.* at 273 (recognizing defendant's incarceration as a relevant factor to the Sixth Amendment even if there is no custody requirement).

Although it may not fit neatly within the Supreme Court's Sixth Amendment jurisprudence, Lowry's case presents a right to counsel violation under that Amendment. Sergeant Miller arranged to interview Lowry, knowing that he was represented by counsel,[42] and spoke to Lowry about the case without counsel's consent or presence.[43] And while a defendant may waive the counsel right, Lowry does not appear to have done so here.[44]  Miller never Mirandized Lowry or even informed him that he had the right to have counsel present.[45]

What's more, it is doubtful that Lowry "initiated" the meeting with Sergeant Miller.  His initiation, if any, consisted of a written complaint against another police officer.[46]  Nothing shows, or even suggests, that Lowry knew his complaint would prompt a face-to-face confrontation with Miller, one of the case agents in the federal (and at least two of the state) cases.[47]

---

[42] Mot. Hr'g Tr. 37; *see also id.* at 41, 47 (speaking with counsel on Dec. 14, 2022 and leaving a voice message for him on Dec. 21, 2022).

[43] *Id.* at 48.

[44] *See Montejo*, 556 U.S. at 786 (waiver of Sixth Amendment right to counsel must be voluntary, knowing, and intelligent); *Patterson v. Illinois*, 487 U.S. 285, 292–93 (1988) (discussing how a defendant may waive this right).

[45] Mot. Hr'g Tr. 49.

[46] *Id.* at 25-26.

[47] *Id.* at 21, 65; *see also Montejo*, 556 U.S. at 786 (waiver of Sixth Amendment right to counsel must be knowing, voluntary, and intelligent); *Carnley v. Cochran*, 369 U.S. 506, 516 (1962)

Sergeant Miller procured Lowry's statements in violation of Lowry's Sixth Amendment right to counsel. The statements should therefore be suppressed and the government barred from making affirmative use of them at trial.

**D. Impeachment**

Since the statements were voluntary, the government may use them to impeach any inconsistent testimony Lowry may give if he testifies at trial. Both the Supreme Court and the Eighth Circuit have permitted the prosecution to use statements acquired in violation of the Sixth Amendment's right to counsel for impeachment purposes.[48]

## CONCLUSION

Lowry voluntarily gave his written and oral statements. The letter he penned to a state judge is admissible for all purposes at trial. His uncounseled statements to Sergeant Miller, however, were obtained in violation of the Sixth Amendment and are inadmissible in the government's case-in-chief but may be used as impeachment should he take the stand and give conflicting testimony.

---

("presuming waiver [of Sixth Amendment right to counsel] from a silent record is impermissible").

[48] *See Kansas v. Ventris*, 556 U.S. 586, 593-94 (2009); *United States v. Baylock*, 421 F.3d 758, 772 (8th Cir. 2005); *United States v. Fellers*, 397 F.3d 1090, 1096 (8th Cir. 2005).

**RECOMMENDATION**

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Lowry's Alternative Motion to Suppress[49] be granted in part and denied in part.

**NOTICE**

The parties consented to a seven calendar day objection period (agreeing to cut the two-week prescribed time in half)[50] to keep the upcoming trial on track. They therefore have seven calendar days after service of this report and recommendation to object to the same. Unless an extension of time for cause is later obtained,[51] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[52] Objections must "identify[] those issues on which further review is desired[.]"[53]

---

[49] Mot. Hr'g Tr. 32-37.

[50] Mot. Hr'g Tr. 77-80.

[51] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[52] *See Thompson*, 897 F.2d at 357; *Nash*, 781 F.2d at 667.

[53] *Arn*, 474 U.S. at 155.

DATED this 12th day of May, 2023.

**BY THE COURT:**

_____

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**